UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES-THOMAS ENGLISH, | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:24-CV-00283 |
| | § | |
| UNITED STATES OF AMERICA, *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the Motion to Dismiss filed by Defendants Judge John Hafley, Judge Keith Stewart, Montgomery County Courthouse, and Montgomery County Jail (collectively, "Montgomery County Defendants"). (Dkt. 12). Having carefully reviewed the complaint,[1] motion, response, and applicable law, the Court **GRANTS** the motion.

## FACTUAL BACKGROUND

Plaintiff's pleadings are disjointed and unclear regarding (1) how any specific causes of action are connected to the named defendants and (2) what relief he is seeking. For purposes of the Court's consideration of the pending motion, the following facts alleged in the complaint (Dkt. 1) and response (Dkt. 34) are taken as true. Plaintiff James-Thomas English was arrested in 2023 and charged with failure to identify and resisting arrest. In the instant complaint, which he filed in 2024, he alleges violations related to that

---

[1] On June 6, 2024, 30 days after the instant motion to dismiss was filed, English filed an amended complaint (Dkt. 41) without the Court's leave. The amended complaint does not indicate that it was filed with consent from the opposing parties. *See* Fed. R. Civ. P. 15(a). Thus, the amended complaint is **STRICKEN**.

1

arrest, his time spent in the Montgomery County jail, and the criminal proceedings before Judges Hafley and Stewart in the Montgomery County Courts at Law that followed from his charges. He appears to assert several claims (some of which are difficult to parse and many of which are directed at Judges Stewart and Hafley) that sound in state law, criminal law, international law, and civil rights, including violations of the First, Fourth, Fifth, Sixth, Thirteenth, and Fourteenth Amendments; due process violations; theft; false arrest; and emotional distress. He also appears to make a claim under the Fair Debt Collection Practices Act against Judges Stewart and Hafley. English seeks monetary damages as well as injunctive relief.

In the pending motion, Montgomery County Defendants argue that (1) English's claims against Judges Hafley and Stewart should be dismissed because they have judicial immunity; (2) his claims against Montgomery County Courthouse and Montgomery County Jail should be dismissed because both entities lack the legal capacity to be sued and that even if English intended to sue Montgomery County, English has failed to plead a claim under *Monell v. Dep't. of Social Services*, 436 U.S. 658, 694 (1978); and (2) the *Younger* abstention doctrine precludes his requested relief because this case involves constitutional challenges to pending state criminal proceedings. (Dkt. 32 at 3–4). The Court considers these arguments below.

## LEGAL STANDARD

### I.         Federal Rule of Civil Procedure 12(b)(6)

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.

R. CIV. P. 8(a)(2). A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests a pleading's compliance with this requirement and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A complaint can be dismissed under Rule 12(b)(6) if its well-pleaded factual allegations, when taken as true and viewed in the light most favorable to the plaintiff, do not state a claim that is plausible on its face. *Amacker v. Renaissance Asset Mgmt., LLC*, 657 F.3d 252, 254 (5th Cir. 2011); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). As the Fifth Circuit has further clarified:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. This includes the basic requirement that the facts plausibly establish each required element for each legal claim. However, a complaint is insufficient if it offers only labels and conclusions, or a formulaic recitation of the elements of a cause of action.

*Coleman v. Sweetin*, 745 F.3d 756, 763–64 (5th Cir. 2014) (quotation marks and citations omitted).

Courts construe pleadings filed by *pro se* litigants under a less stringent standard of review. *Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam). Under this standard, "[a] document filed *pro se* is 'to be liberally construed,' *Estelle* [*v. Gamble*, 429 U.S. 97, 106 (1976)], and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (observing that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *see also Payton v. United States*, 550 Fed. App'x 194, 195 (5th Cir. 2013) (affirming dismissal of *pro se* complaint that "failed to plead with any particularity the facts that gave rise to [the plaintiff's] present cause of action") ("[T]he liberal *pro se* pleading standard still demands compliance with procedural standards.").

When considering a motion to dismiss, a district court generally may not go outside the pleadings. *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010). The court's review is limited to the complaint; any documents attached to the complaint; any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint; and matters subject to judicial notice under Federal Rule of Evidence 201. *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir. 2022); *George v. SI Group, Inc.*, 36 F.4th 611, 619 (5th Cir. 2022).

## II.       Federal Rule of Civil Procedure 12(b)(1)

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A motion filed under Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge the subject matter jurisdiction of the district court to hear a case. *Id*. The party asserting that federal subject matter jurisdiction exists bears the burden of proving it by a preponderance of the evidence. *Ballew v. Continental Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012). Under Rule 12(b)(1), the court may consider any of the following: (1) the complaint alone;

4

(2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Walch v. Adjutant General's Department of Texas*, 533 F.3d 289, 293 (5th Cir. 2008).

## ANALYSIS

### III.      International Law Claims

Plaintiff appears to invoke international laws in his complaint and response, such as the Charter of the United Nations, the Universal Declaration of Human Rights, the International Covenant on Civil and Political Rights, the American Convention on Human Rights, the American Declaration of the Rights and Duties of Man. (Dkt. 34 at 36–41; Dkt. 1 at 10). He also asserts that the "refusal to recognize international documents, such as the World Passport, contravenes . . . customary international law." (Dkt. 1 at 10). The Court will dismiss these claims. English cannot bring a claim under any of the international instruments he invokes.

The Supreme Court has explained that "[e]ven when treaties are self-executing in the sense that they create federal law, the background presumption is that international agreements, even those directly benefitting private persons, generally do not create private rights or provide for a private cause of action in domestic courts . . . absen[t] . . . express language to the contrary." *Medellin v. Texas*, 552 U.S. 491, 506 n. 3 (2008) (quotation marks, brackets, and citation omitted). Paralleling the presumption discussed in *Medellin* is the Seventh Circuit's observation that "[i]t is well established that individuals have no standing to challenge violations of international treaties in the absence of a protest by the

sovereigns involved." *Matta-Ballesteros v. Henman*, 896 F.2d 255, 259 (7th Cir. 1990); *see also United States v. Jimenez-Nava*, 243 F.3d 192, 195 & n. 3 (5th Cir. 2001).

The Fifth Circuit has affirmed that "individual plaintiffs do not have standing to raise any claims under the United Nations Charter," "the Universal Declaration of Human Rights, and the International Covenant on Civil and Political Rights." *Dickens v. Lewis*, 750 F.2d 1251, 1254 (5th Cir. 1984); *see Sosa v. Alvarez-Machain*, 542 U.S. 692, 734–735 (2004) (explaining that the Universal Declaration of Human Rights "does not of its own force impose obligations as a matter of international law" and the International Covenant on Civil and Political Rights "was not self-executing and so did not itself create obligations enforceable in the federal courts"); *Martinez-Lopez v. Gonzales*, 454 F.3d 500, 502 (5th Cir. 2006) ("[T]his Court cannot grant relief under the [International Covenant on Civil and Political Rights] because it is not a self-executing treaty."). The Seventh Circuit has explained that the United States has signed but not ratified the American Convention on Human Rights and "so that document does not yet qualify as one of the 'treaties' of the United States that creates binding obligations." *Garza v. Lappin*, 253 F.3d 918, 925 (7th Cir. 2001). And the American Declaration of the Rights and Duties of Man "is an aspirational document" that "did not on its own create any enforceable obligations on the part of any of the [Charter of the Organization of American States] member nations," which includes the United States. *Id.* Finally, although customary international law is an accepted source of international law in the United States, English has not cited any custom that is applicable to "refusal to recognize international documents, such as the World Passport" (Dkt. 1 at 10). *See United States v. Jeong*, 624 F.3d 706, 712 (5th Cir. 2010).

English has no basis on which to claim a legal interest under international law that is enforceable against the Montgomery County Defendants. Accordingly, his international law claims against the Montgomery County Defendants are **DISMISSED WITH PREJUDICE**.

### IV.    Criminal Laws

English mentions 18 U.S.C. §§ 241 and 242 in his complaint (Dkt. 1 at 13) although it is not clear that he is stating a cause of action under either criminal statute. To the extent that he is, neither is applicable to this civil proceeding.

18 U.S.C. § 241 "which criminalizes conspiracies to deprive a person of 'any right or privilege secured to him by the Constitution or laws of the United States,' does not give rise to a private cause of action." *Lang v. Quinlan*, 990 F.2d 1252 (5th Cir. 1993). 18 U.S.C. § 242 "is a criminal statute with no correlating civil cause of action." *Hebrew v. Houston Media Source, Inc.*, No. 09-CV-3274, 2010 WL 2944439, at *1 n.2 (S.D. Tex. July 20, 2010), *aff'd sub nom. Hebrew v. Houston Media Source*, 453 F. App'x 479 (5th Cir. 2011); *see Parham v. Clinton*, No. 09–20681, 2010 WL 1141638, at *1 n.1 (5th Cir. Mar. 17, 2010) (unpublished); *Johnson v. Fed. Bureau of Investigation*, No. CV H-16-1337, 2016 WL 9776489, at *3 (S.D. Tex. Nov. 17, 2016) (18 U.S.C. § 242 does "not provide a private cause of action"). Accordingly, English's claims under either statute against the Montgomery County Defendants are **DISMISSED WITH PREJUDICE**.

### V.        Claims for Prospective Injunctive Relief and the *Younger* Abstention Doctrine

English seeks injunctive relief related to his pending state-court case. Indeed, he concedes in his response that his "pending criminal cases surrounding the same facts as this case is precisely why this complaint was filed." (Dkt. 34 at 21). He states that "the lower court has consistently refused to provide a fair resolution. Therefore, the only recourse left is to elevate this situation to a higher court to rectify the fraud being committed by the lower court." (Dkt. 34 at 53).

Although English appears to list many requests for relief in his complaint and response, many of those are requests that this Court review Defendants' actions in his criminal proceeding and/or take some action to hold Defendants accountable, rectify injustices, or impose requirements on Judges Hafley and Stewart. For example, he asks the Court to "hold[] Judge Hafley and Judge Stewart accountable for their actions that violate their oath of office. This may include judicial review of their conduct, disciplinary measures, or other appropriate remedies to ensure that the integrity of the judicial system is upheld. . . Relief can be granted by holding the judges accountable for their breach of oath and violation of constitutional rights, ensuring that justice is administered fairly and impartially. This may involve transferring the case to a higher court where impartial adjudication can occur, allowing for a thorough examination of the legal proceedings and addressing any fraudulent conduct." (Dkt. 34 at 5). Similarly, he explains elsewhere in his response that "[r]elief can be granted by the court through an examination of the actions of Judge Stewart & Hafley to determine whether they have indeed disregarded affidavits and

motions challenging the narrative of criminal conduct without regard to constitutional rights. If it is found that Judge [Insert Judge's Name] has acted in a manner that compromises impartiality, relief can be granted by reevaluating the proceedings and ensuring that constitutional rights are upheld." (Dkt. 34 at 16–17). And elsewhere in the response, he asks for relief "recognizing the absence of jurisdiction, voiding any proceedings conducted without proper jurisdiction, acknowledging the judges' exceeding of authority, voiding any orders issued in violation of the law, and addressing violations of rights and laws to uphold the integrity of the judicial system." (Dkt. 34 at 26).

Montgomery County Defendants argue that the *Younger* abstention doctrine precludes Plaintiff's requested relief. (Dkt. 32 at 4). Eleventh Amendment sovereign immunity does not shield state officials from claims seeking prospective injunctive relief against ongoing violations of federal law. *See Ex parte Young*, 209 U.S. 123, 155–56 (1908). Nevertheless, even assuming that English has adequately pled a legally cognizable claim against any of the Montgomery County Defendants, the Court finds that it must abstain from exercising jurisdiction over English's claims for injunctive relief.

The *Younger* abstention doctrine stands for the principle that "federal courts should not enjoin pending state criminal prosecutions unless the plaintiff shows bad faith, harassment, or any other unusual circumstances that would call for equitable relief, such as a flagrantly and patently unconstitutional state statute." *Google, Inc. v. Hood*, 822 F.3d 212, 222 (5th Cir. 2016) (quotation marks omitted) (citing *Younger v. Harris*, 401 U.S. 37, 53–54 (1971)); *Rickhoff v. Willing*, 457 F. App'x 355, 358 (5th Cir. 2012) ("According to *Younger*, federal courts must refrain from considering requests for injunctive or declaratory

relief based upon constitutional challenges to state proceedings pending at the time the federal action was commenced.") (citing *Texas Ass'n of Bus. v. Earle*, 388 F.3d 515, 518 (5th Cir. 2004)).

The *Younger* doctrine applies to three categories of state proceedings: "ongoing criminal prosecutions," "certain civil enforcement proceedings akin to criminal prosecutions," and "pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Hood*, 822 F.3d at 222 (quotation marks and ellipsis omitted). "If state proceedings fit into one of these categories," then the *Younger* doctrine applies if there is: "(1) an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) provides an adequate opportunity to raise federal challenges." *Id.* (quotation marks and ellipsis omitted). The *Younger* doctrine requires dismissal of suits for injunctive and declaratory relief, but not suits for money damages. *Id.*; *see also Alexander v. Ieyoub*, 62 F.3d 709, 713 (5th Cir. 1995).

Here, abstention is appropriate because the state criminal proceeding is ongoing. *See State of Texas v. English, James T, Jr.*, Case No. 23-376801, County Court at Law #1 of Montgomery County, Texas (available at https://odyssey.mctx.org/County/ CaseDetail.aspx?CaseID=2621317) (last visited June 10, 2024).[2] Indeed, the state criminal proceeding was initiated on June 22, 2023, but English did not commence the instant

---

[2] Though the case status is listed as "Inactive - Pending," it appears that that is because there may currently be warrants issued as to English per the Montgomery County Sheriff's Office's Warrant Search website. *See* Warrant Search (available at https://warrantsearch.mctx.org/WarrantSearch/) (last visited June 10, 2024).

federal action until January 24, 2024. *Id.* These proceedings implicate Texas's important interests in enforcement of its criminal laws. *See RTM Media, L.L.C. v. City of Houston*, 584 F.3d 220, 228 & n.11 (5th Cir. 2009). Moreover, the state court proceedings provide an adequate forum to raise the federal challenges English brings in this suit, including his due process claims. *See Google*, 822 F.3d at 222. English has not pled sufficient facts to show that any exception to the application of this doctrine would apply to his complaint. Accordingly, the Court will abstain from considering English's claims for prospective injunctive relief and they are **DISMISSED WITHOUT PREJUDICE**.

## VI.      Judges Stewart and Hafley

Judges Keith Stewart and John Hafley are Texas state-court judges who preside over Montgomery County Court at Law 5 and Montgomery County Court at Law 1, respectively. English does not specify whether he is suing Judges Stewart and Hafley in their official or individual capacities, but the Court finds his claims for money damages are barred in either case.

— *Judicial Immunity*

English's claims against Judges Stewart and Hafley in their individual capacities are barred by judicial immunity. *See Davis v. Tarrant County, Texas*, 565 F.3d 214, 221 (5th Cir. 2009). "A judge generally has absolute immunity from suits for damages." *Id.* (citing *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991)); *see, e.g.*, *Carter v. Duggan*, 455 F.2d 1156, 1158 (5th Cir. 1972) ("We agree with the trial court that the two state judges are cloaked with judicial immunity and may not be subjected to a demand for damages for

judicial action or inaction whether the right to damages is asserted to arise under Title 42, U.S.C., Section 1983 or under any other theory of liability.").

"Judges are afforded absolute immunity when they perform a normal judicial function unless they are acting in the clear absence of all jurisdiction." *Duke v. Wallace*, No. 4:19-CV-3353, 2020 WL 1650768, at *1 (S.D. Tex. Mar. 26, 2020); *see also Stump v. Sparkman*, 435 U.S. 349, 355–56, 360 (1978). Even "if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune." *Stump*, 435 U.S. at 357 n.7; *see also Harry v. Lauderdale Cnty.*, 212 F. App'x 344, 347 (5th Cir. 2007) (explaining that even where state appellate court held that judge acted without subject matter jurisdiction that holding was "not coterminous with the conclusion that [the judge] acted in 'complete absence of all subject matter jurisdiction' " because if "this were the case, each and every time a judge decided an issue where an appellate court later found subject matter jurisdiction lacking, that judge would have no judicial immunity," and that "proposition seems antithetical to the concerns underlying absolute judicial immunity"); *Wood v. Parker Cnty.*, 463 F. App'x 360, 361 (5th Cir. 2012) ("[T]he judges of the county court at law are entitled to immunity because they did not act in clear absence of all jurisdiction, despite the state appellate court later determining the county court lacked subject matter jurisdiction over the testamentary trust issues presented.").

"This circuit has adopted a four-factor test for determining whether a judge's actions were judicial in nature: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct

spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity." *Davis*, 565 F.3d at 222. "These factors are broadly construed in favor of immunity." *Id.* at 223.

"Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Judicial immunity "is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Id.*; *see also Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("This immunity applies even when the judge is accused of acting maliciously and corruptly[.]"). "The alleged magnitude of the judge's errors or the mendacity of his acts is irrelevant." *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994).

Here, English's complaint and response are filled with allegations demonstrating that his concerns with Judges Hafley and Stewart arose from actions judges allegedly took in their judicial capacities. The actions English complains about are judicial in nature. English's allegations as to the judges center around the problems he perceives with the way the judges carried out their normal judicial functions in English's criminal proceedings before their courts. For example, he complains that "[t]he judge's actions during the proceedings raised concerns about the protection of [his] First Amendment rights," that the "judge's failure to acknowledge and respect [his] right to remain silent, protected under the Fifth Amendment and Miranda rights, represents a serious breach of due process," about the "judge's inability or unwillingness to provide clear answers

regarding jurisdiction," that "the judge failed to dismiss the case or rectify the prosecutor's use of codes and statutes designed for corporations," that the court "fail[ed] to ensure that the charges were clearly explained," that the "court proceeded without due consideration for the plaintiff's legal standing," and that "the judge presiding over the case continued proceedings with the knowledge that the Plaintiff is not a U.S. citizen." (Dkt. 1). He similarly states in his response that he is asserting claims against the judges for, e.g., "disregarding jurisdictional rights and violating due process," "ignoring legal notices, including affidavits and proof of claims," "lack of jurisdiction and violation of fundamental legal principles," and "engaging in fraudulent actions and violating his sovereignty by coercing his participation in legal proceedings without his voluntary consent." (Dkt. 34).

All these allegations concern actions or inactions that fall squarely within Judge Andrews's normal judicial functions (*i.e.*, evaluating jurisdiction and standing, conducting legal proceedings, addressing the parties, reviewing documents in the case, determining whether a matter should continue or be dismissed, etc.). *See Carter*, 455 F.2d at 1158. That English complains that the judges' actions were serious errors does not affect the judges' judicial immunity. *See Mireles*, 502 U.S. at 12–13 ("If judicial immunity means anything, it means that a judge 'will not be deprived of immunity because the action he took was in error ... or was in excess of his authority.'"); *Boyd*, 31 F.3d at 284.

English appears to assert that judges function "as an administrative officer and not in a judicial capacity" when they "enforce statutes and their subsequent amendments."

14

(Dkt. 1 at 7). However, the legal authority he cites, *Thompson v. Smith*, 155 Va. 367 (1930) does not support this proposition. That case states that a "judge of the municipal court" is acting as an administrative officer "[w]hen acting upon an application for the reinstatement of a permit revoked by the chief of police." *Smith*, 155 Va. at 376. He also asserts that Judge Stewart "was not acting judicially but rather was functioning as a debt collector" (Dkt. 34 at 7) but later concedes that the judges were "tasked with enforcing financial obligations owed to the United States government" "in their official capacity as judges" and that their actions as debt collectors "exceeded the traditional scope of judicial duties" (Dkt. 34 at 9). Judicial immunity, however, applies even when an action is taken in "excess" of a judge's authority. *See Mireles*, 502 U.S. at 12–13

English has also not averred facts showing that Judge Andrews's actions—all judicial in nature—were taken in "the clear absence of all jurisdiction." *See Duke*, 2020 WL 1650768, at *1. English's repeated assertions that there was a lack of jurisdiction are far too vague and conclusory to overcome the judges' judicial immunity. *See Stump*, 435 U.S. at 357 n.7; *Harry*, 212 F. App'x at 347; *Wood*, 463 F. App'x at 361. And to the extent that English asserts that he is beyond the jurisdiction of the courts because he is a sovereign ("I stand as a sovereign individual within a republic," Dkt. 34 at 26), that argument is without merit. *See, e.g.*, *United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011) ("Regardless of an individual's claimed status of descent, be it as a 'sovereign citizen,' a 'secured-party creditor,' or a 'flesh-and-blood human being,' that person is not beyond the jurisdiction of the courts."); *Weigel v. Gray*, No. CV H-24-128, 2024 WL 289027, at *4 (S.D. Tex. Jan. 25, 2024) ("Weigel's claims that Judge Gray and Judge Cox

do not have jurisdiction over him because he is a sovereign citizen are based on an indisputably meritless legal theory."); *Basey v. Trump*, No. 4:18-CV-0532, 2019 WL 11658787, at *1 n.1 (S.D. Tex. Mar. 8, 2019) ("To the extent that Basey's petition may be construed as a challenge to his current confinement based on a 'sovereign citizen' defense to jurisdiction, such a theory has 'no conceivable validity in American law.'")

Accordingly, Judges Stewart and Hafley are entitled to judicial immunity, and English's claims for money damages against Judges Stewart and Hafley in their individual capacities are **DISMISSED WITH PREJUDICE** under Rule 12(b)(6). *See Ballard v. Wall*, 413 F.3d 510, 517 (5th Cir. 2005) (finding that district court's grant of motion to dismiss in favor of state-court judge under Rule 12(b)(6) was proper); *Morrison v. Walker*, 704 F. App'x 369, 372 (5th Cir. 2017) (explaining, in a case involving judicial immunity and qualified immunity, that although defendants moved to dismiss under both Rule 12(b)(1) and Rule 12(b)(6), the court analyzed defendants' motions under the Rule 12(b)(6) standard "because the arguments for immunity are attacks on the existence of a federal cause of action").

— *Sovereign Immunity*

English's federal claims for monetary damages against Judges Stewart and Hafley in their official capacities are barred by sovereign immunity. "Texas judges are entitled to Eleventh Amendment immunity for claims asserted against them in their official capacities as state actors." *Davis*, 565 F.3d at 228; *see also Quern v. Jordan*, 440 U.S. 332, 345 (1979) (holding that Section 1983 does not abrogate the states' Eleventh Amendment immunity). Accordingly, English's federal claims against Judges Stewart

and Hafley in their official capacities for monetary damages are **DISMISSED WITHOUT PREJUDICE** under Rule 12(b)(1) as barred by sovereign immunity. *See United States v. $4,480,466.16 in Funds Seized from Bank of Am. Acct. Ending in 2653*, 942 F.3d 655, 666 (5th Cir. 2019) ("Claims barred by sovereign immunity are dismissed without prejudice."); *Warnock v. Pecos County, Texas*, 88 F.3d 341, 343 (5th Cir. 1996) ("[C]laims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice.").

### VII.     Montgomery County Jail

—*Non Sui Juris*

Montgomery County Jail is not a proper party to this lawsuit because it is non sui juris, meaning it lacks the legal capacity to sue or be sued as a matter of law. A department must have a separate legal existence to be sued. *Parker v. Fort Worth Police Dep't*, 980 F.2d 1023, 1026 (5th Cir. 1993); *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991); *Wakat v. Montgomery County*, 471 F. Supp. 2d 759, 768 (S.D. Tex. 2007). A political subdivision cannot sue or be sued unless it is a separate and distinct corporate entity. *See Kirby Lumber Corp. v. State of La. through Anacoco-Prairie State Game & Fish Comm'n*, 293 F.2d 82, 83 (5th Cir. 1961). The capacity of an entity to sue or be sued is determined by the law of the state where the court is held. *Darby*, 939 F.2d at 313. An unincorporated department of the government is not a legal entity and cannot be sued. *See Owyhee Grazing Ass'n, Inc. v. Field*, 637 F.2d 694, 697 (9th Cir. 1981).

Montgomery County Jail is a department of Montgomery County, Texas. It is not a separate entity capable of independent legal action. Accordingly, the Court finds that Montgomery County Jail cannot be sued and is entitled to dismissal from the action.

— *Municipal Liability Under 42 U.S.C. § 1983*

Even if English sued the proper defendant, Montgomery County, his claims would still fail because a governmental entity can be held liable for civil rights violations only under Section 1983, and English has not stated a claim under Section 1983. "Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). A local government may not be sued under Section 1983 for the deprivation of rights guaranteed by the Constitution or federal law inflicted solely by its employees or agents. *See Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory."). However, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury," the government agency is liable under Section 1983. *Id.*

To state a claim under Section 1983, "a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

"An official policy is either (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's

lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or (2) a persistent, widespread practice of officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents the municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority."

*McIntosh v. Smith*, 690 F. Supp. 2d 515, 530 (S.D. Tex. Feb. 2, 2010) (citing

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).

Though English has alleged that his constitutional rights were violated (e.g., through his arrest and during his time at the jail), he does not plead any facts that describe an official policy promulgated by the municipal policymaker that was the moving force behind the violation of any constitutional right so Montgomery County, even if properly sued, cannot be held liable under Section 1983.

### VIII.   Montgomery County Courthouse

—*Non Sui Juris*

The Montgomery County Courthouse is *non sui juris* (i.e., a non-jural entity) and thus not a proper party to this lawsuit. "Federal courts in Texas have uniformly held that courts are non-jural entities that are not subject to suit." *Craaybeek v. Bristow*, No. 7:20-CV-031-O, 2021 WL 2274889, at *1 (N.D. Tex. May 19, 2021) (collecting cases), *appeal dismissed*, No. 21-10564, 2022 WL 2113619 (5th Cir. June 13, 2022); *Fleming v. Sixth Dist. Ct. of Lamar Cnty.*, No. 420CV00025RWSCAN, 2020 WL 8299710, at *2 (E.D. Tex. Dec. 23, 2020) (same), *report and recommendation adopted*, No. 420CV00025RWSCAN, 2021 WL 274444 (E.D. Tex. Jan. 27, 2021); *see, e.g.*, *Howell v. Just. Ct. 3-1 of Collin Cnty.*, No. 3:22-CV-1632-X-BH, 2022 WL 4125262, at *2 (N.D. Tex. July 29, 2022)

("State courts are not jural entities that may be sued."), *report and recommendation adopted*, No. 3:22-CV-1632-X (BH), 2022 WL 4125089 (N.D. Tex. Sept. 8, 2022). As with Montgomery County Jail, the Montgomery County Courthouse is a non-jural entity and therefore not subject to suit. Thus, the Montgomery County Courthouse is entitled to dismissal from the action.

 *—Sovereign Immunity*

To the extent English was attempting to sue the Montgomery County Courts at Law when he named the "Montgomery County Courthouse," those claims are also barred by sovereign immunity.[3] Absent a State's consent, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The "State of Texas and its courts are protected by sovereign immunity," and "sovereign immunity . . . cloaks state courts with immunity from suit." *Florance v. Bush*, No. 3:09-CV-1470-B-BH, 2010 WL 2730615, at *7 (N.D. Tex. May 25, 2010), *report and recommendation adopted*, No. 3:09-CV-1470-B-BH, 2010 WL 2730648 (N.D. Tex. July 8, 2010) (dismissing claims against, *inter alia*, the Fifth Court of Appeals); *see, e.g.*, *Cain v. City of New Orleans*, No. CV 15-4479, 2016 WL 2742374, at *1 (E.D. La. May 11, 2016) ("Courts in this and other circuits routinely hold that state courts are immune from suit under the Eleventh Amendment.") (collecting cases).

---

[3] To the extent English was attempting to sue Montgomery County when he named "Montgomery County Courthouse," he fails to state a claim under Section 1983, as discussed above.

### IX.        Supplemental Jurisdiction

English appears to assert claims under state law. For example, he appears to allege "illegal impoundment," false arrest and assault, theft, negligence and recklessness, and emotional distress. (Dkt. 1 at 4–5, 9; Dkt. 34 at 51–52). Having dismissed all federal causes of action in this case, the Court will decline to exercise supplemental jurisdiction over English's state-law claims. Federal district courts have the discretion to decline to exercise supplemental jurisdiction over state-law claims; that discretion is guided by the statutory factors set forth in 28 U.S.C. § 1367(c) and the common-law factors of judicial economy, convenience, fairness, and comity. *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008).

The factors listed in 28 U.S.C. § 1367(c) are:

(1) the claim raises a novel or complex issue of State law;

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;

(3) the district court has dismissed all claims over which it has original jurisdiction; or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

"These interests are to be considered on a case-by-case basis, and no single factor is dispositive." *Mendoza*, 532 F.3d at 346. The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial. *Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).

Having considered the statutory and common-law factors, the Court will follow the general rule, decline to exercise supplemental jurisdiction over English's state-law claims, and dismiss those claims without prejudice.

## CONCLUSION

Accordingly, for the reasons stated above the Court finds that the Montgomery County Defendants' Motion to Dismiss (Dkt. 32) should be **GRANTED**. In addition, Plaintiff was ordered to serve all Defendants and file proof of such service with the Court on or before June 20, 2024. Plaintiff has not filed proof of service. Accordingly, pursuant to Federal Rule of Civil Procedure 4(m), because 90 days have elapsed since the Complaint was filed and U Garcia, Rodney Minger, the State of Texas, and the United States of America have not been served, Plaintiff's claims against them are hereby **DISMISSED for want of prosecution.** All other pending motions are **DENIED AS MOOT.**

SIGNED at Houston, Texas on August 27, 2024.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE